UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CASE NO. 3:02-CR-00190-FDW

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| v. | ) |
| | ) **ORDER** |
| HECTOR RUBEN MCGURK, | ) |
| Defendant. | ) |

**THIS MATTER** is before the Court on Defendant's Motion for Compassionate Release pursuant to 18 U.S.C. § 3583(c), (Doc. No. 220), Defendant's Motion to Expedite, (Doc. No. 241), and a Motion to Withdraw as Counsel by one of Defendant's attorneys, (Doc. No. 240). This matter has been fully briefed, (Doc. Nos. 220, 226, 229, 242), and is ripe for ruling. Having carefully considered the motions and the record, the undersigned will GRANT the Motion to Expedite, GRANT the Motion to Withdraw, and DENY the Motion for Compassionate Release.

### I. BACKGROUND

Defendant was "an organizer and leader" in a marijuana trafficking operation, (Doc. No. 199, p. 71), based out of El Paso, Texas, where he resided, (Doc. No. 224, p. 4). Defendant owned and operated an independent trucking company through which he contracted with Allied Van Lines to "transport furniture and other household items throughout the country." Id. This trucking company was used as a front, however, for Defendant's marijuana trafficking operation, as he would transport marijuana in these furniture shipments to various states, including North Carolina. Id. To assist him in this operation, Defendant hired several others as couriers. Id.

According to the Presentence Investigation Report (PSR), Defendant laundered the proceeds from his drug trafficking business "through an automobile lot registered/owned in his

1

daughter's name, where payments were delivered and proceeds were processed. [Defendant] purchased numerous vehicles, trucks, motorcycles and real property with the money he earned through his marijuana transactions and arranged to purchase homes and automobiles for the individuals he hired to make marijuana deliveries." Id. at 5. Additionally, Defendant "directed his employees on how to dispose of the monies earned through the drug trafficking business . . . ." Id. at 5.

On March 5, 2001, two of Defendant's couriers were arrested in Woodleaf, North Carolina, while transporting 8,200 pounds of marijuana. Id. A year later, on March 28, 2002, two more of Defendant's couriers were arrested in South Carolina with 788 pounds of marijuana. Id. at 5. As Defendant's couriers were arrested, Defendant financially supported their families, (Doc. No. 199, p. 132), and he hired attorneys to represent two of them, who were brothers, Martin and Mario Barragan (Doc. No. 224, pp. 4–5). Defendant contacted the wife of Martin Barragan "and advised her how important it was for Martin Barragan not to cooperate with investigators. He told her to tell Martin Barragan not to say anything to the police and for her to remember what had happened to Martin's first wife, who was killed under suspicious drug related circumstances." Id. at 5. Once the brothers began cooperating with investigators, Defendant visited Martin Barragan's wife again and "advised her that if [her brother-in-law] cooperated with police, the same thing that happened to [her brother-in-law's] first wife would happen to her." Id. at 5. Defendant also told her "they" had kidnapped one of the other co-conspirators, Abel Haro.[1] Id. at 5. Additionally, the Immigration and Customs Enforcement case agent assigned to this case testified at Defendant's sentencing hearing that based upon his interviews of the courier's wife, she appeared frightened, intimidated, and threatened. (Doc. No. 199, pp. 77–78).

---

[1] According to the PSR, this individual is missing and presumed dead. Id. at 5.

The PSR indicates that at least twenty trips involving marijuana trafficking were made to North Carolina, including an average of eight to ten boxes per trip. (Doc. No. 224, p. 5). Based on an estimated weight of 75 to 250 pounds per box, the PSR suggests the Defendant was responsible for the trafficking of at least 20,000 kilograms of marijuana to North Carolina.

In the Third Superseding Bill of Indictment, a Grand Jury in the Western District of North Carolina charged Defendant and two co-defendants with the following crimes: (i) conspiring to possess with intent to distribute 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 846 and 841 (Count One); (ii) conspiring to knowingly, intentionally, and unlawfully import from Mexico into the United States 1,000 kilograms or more of marijuana, in violation of 21 U.S.C. §§ 952(a), 960, and 963 (Count Two); (iii) conspiring to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Three); (iv) knowingly intimidating, attempt to intimidate, threaten, and attempt to threaten a witness in the case against him, in violation of 18 U.S.C. § 1512(b)(1) (Count Four); (v) knowingly intimidating, attempt to intimidate, threaten, and attempt to threaten a witness in the case against him, in violation of 18 U.S.C. § 1512(b)(3) (Count Five); (vi) knowingly intimidating, attempt to intimidate, threaten, and attempt to threaten a witness in the case against him, in violation of 18 U.S.C. § 1512(b)(1) (Count Six); (vii) knowingly intimidating, attempt to intimidate, threaten, and attempt to threaten a witness in the case against him, in violation of 18 U.S.C. § 1512(b)(3) (Count Seven); (viii) knowingly intimidating, attempt to intimidate, threaten, and attempt to threaten a witness in the case against him, in violation of 18 U.S.C. § 1512(b)(1) (Count Eight); (ix) knowingly intimidating, attempt to intimidate, threaten, and attempt to threaten a witness in the case against him, in violation of § 1512(b)(3) (Count Nine); (x) knowingly intimidating, attempt to intimidate, threaten, and attempt to threaten a witness in the case against him, in violation of 18 U.S.C. § 1512(b)(1) (Count Ten); and (xi) knowingly

intimidating, attempt to intimidate, threaten, and attempt to threaten a witness in the case against him, in violation of 18 U.S.C. § 1512 (b)(3) (Count Eleven). (Doc. No. 38).

On December 9, 2004, this Court granted Defendant a judgment of acquittal as to Counts Four through Eleven. Defendant's case proceeded to a jury trial, and on December 13, 2004, the jury acquitted Defendant of Count Two but came to an impasse as to Counts One and Three. (Doc. Nos. 94, 95). Thus, a mistrial was declared as to those counts. On April 8, 2005, a new jury convicted Defendant of Counts One and Three. (Doc. No. 133).

Defendant's PSR gave him a Total Offense Level of forty-six. (Doc. No. 224, p. 7). At his sentencing hearing, this Court found Defendant to be the organizer or leader of a conspiracy involving five or more people that was extensive because it involved fifteen to twenty-five trips trafficking marijuana from Mexico to North Carolina. (Doc. No. 199, p. 136). Thus, this Court retained the four-point offense level enhancement for Defendant's role in the offense. (Doc. No. 224, p. 6). This Court also found Defendant obstructed justice based on his threats to the wife of one of his couriers as well as his lying about his involvement in the marijuana trafficking at his trial. (Doc. No. 199, p. 138). Thus, this Court retained the two-point offense level enhancement for Defendant's obstruction of justice. This Court found in Defendant's favor, however, for a two-point gun enhancement, bringing his Total Offense Level to forty-four. Id. at 134. Accordingly, this Court sentenced Defendant to life on Count One and 240 months on Count Three. Id. at 147. Significantly, Defendant continued to deny responsibility for his actions in a statement he made to this Court moments before his sentencing. Id. at 147.

On May 18, 2020, Defendant submitted a petition for compassionate release to the warden of the prison he is housed, (Doc. No. 220, p. 7), and on November 3, 2020, the warden denied his request, (Doc. No. 229, p. 2, n. 2). Then, on February 1, 2021, Defendant moved this Court "for

an order of compassionate release . . . based on his advanced age of sixty years, his deteriorating health, and more than seventeen years of incarceration for a non-violent marijuana offense." (Doc. No. 220, p. 1). Defendant has served approximately 241 months of his life sentence.

## II.     APPLICABLE LAW

Section 603(b) of The First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to permit a defendant to seek modification of his sentence from the court for "extraordinary and compelling reasons" if the defendant has "fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." Before the First Step Act amended § 3582(c)(1)(A), a court could only act to reduce a defendant's sentence for extraordinary and compelling reasons if the BOP filed a motion seeking that relief.

If a defendant has administratively exhausted a claim for release (or the Government does not contest the exhaustion requirement),[2] the district court generally conducts a two-step inquiry when deciding whether to reduce a defendant's sentence under § 3582(c)(1)(A). United States v. Bond, 56 F.4th 381, 383 (4th Cir. 2023). First, the court determines whether the defendant is eligible for a sentence reduction. "A defendant is eligible if the court finds extraordinary and compelling reasons warrant such a reduction.'" Id. (quoting § 3582(c)(1)(A)(i); citing United States v. Kibble, 992 F.3d 326, 330 (4th Cir. 2021)). "[D]istrict courts are empowered to consider any extraordinary and compelling reason for release that a defendant might raise." United States v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) (internal alterations and citations omitted).

---

[2] United States v. Muhammad, 16 F.4th 126, 130 (4th Cir. 2021) (recognizing the exhaustion requirement in § 3582(c)(1)(A) is not jurisdictional, and it may be waived or forfeited).

"Second, the court considers 'the factors set forth in § 3553(a) to the extent that they are applicable.'" Bond, 56 F.4th at 384 (quoting 18 U.S.C. § 3582(c)(1)(A); citing Kibble, 992 F.3d at 331). § 3553(a) requires the court to "impose a sentence sufficient, but not greater than necessary" to comply with the basic aims of the statute. In considering whether a reduced sentence is warranted given the applicable § 3553(a) factors, the court considers, among others, "the nature and circumstances of the offense;" "the history and characteristics of the defendant;" the need for the sentence to "provide just punishment," "afford adequate deterrence," "protect the public," and "provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" the kinds of sentences available and sentencing ranges; and "the need to avoid unwarranted sentence disparities." 18 U.S.C. § 3553(a). Notwithstanding the existence of "extraordinary and compelling reasons," the court retains the discretion to deny a defendant's motion after balancing the applicable 18 U.S.C. § 3553(a) factors. United States v. High, 997 F.3d 181, 186 (4th Cir. 2021) ("if a court finds that a defendant has demonstrated extraordinary and compelling reasons, it is still not required to grant the defendant's motion for a sentence reduction.").

Here, the record is clear Defendant exhausted his administrative remedies; thus, the Court's analysis turns to whether Defendant presents extraordinary and compelling reasons supporting his release in light of the applicable § 3553(a) factors.

### III. ANALYSIS

#### A. Extraordinary and Compelling Reasons

Defendant asserts there are four reasons that support a reduction in his sentence to time served that are extraordinary and compelling: (1) his deteriorating health and particular risks from

COVID-19; (2) his record of rehabilitation, verified release plan, and family support; (3) a change in law; and (4) the amount of time he has served based on changes in laws related to marijuana.

First, the Court acknowledges Defendant's asserted medical conditions, which include diabetes, hypertension, sinus conditions, degenerative disc disease, osteoarthritis, chronic knee and shoulder pain, and constant exhaustion associated with these conditions. (Doc. No. 220, p. 11). The Court also acknowledges the increased risk COVID-19 poses to individuals with conditions like diabetes and hypertension. As of March 5, 2021, however, Defendant has received at least two doses of the Moderna COVID-19 vaccine.[3] (Doc. No. 227, pp. 82–83). Additionally, Defendant has already contracted and recovered from COVID-19 at least once. Id. at 3, 69. And this one bout of COVID-19 proved mild, as Defendant did not report any cough, congestion, sore throat, muscle pain, chills, or fatigue. Id. at 34. Moreover, nothing in the record suggests Defendant's current place of incarceration has failed to take appropriate measures to manage Defendant's medical conditions. In fact, in response to Defendant's petition for compassionate release, the warden of his prison wrote "you do not meet the criteria for a debilitated medical condition at this time. While your medical diagnosis may be progressive, your medical conditions can be treated in a correctional facility and your physical health does not diminish your ability to function in a correctional setting." (Doc. No. 226, Ex. B, p. 1). None of these facts establish an extraordinary and compelling reason warranting Defendant's early release from prison.

Second, Defendant's record of rehabilitation, verified release plan, and family support do not establish extraordinary and compelling reasons supporting a sentence reduction. "Rehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason." 28 U.S.C. § 994(t). And although Defendant cites two cases from other districts

---

[3] It should be noted that since the parties briefed this matter, the U.S. national emergency to respond to COVID-19 has ended. National Emergencies Act, PL 118-3, April 10, 2023, 137 Stat 6.

suggesting family support aided the Court in finding extraordinary and compelling circumstances, (Doc. No. 220, p. 16), no caselaw binding on this Court has found family support to be an extraordinary and compelling reason favoring a sentence reduction. The Court, nonetheless, applauds Defendant for the work he has done in prison to rehabilitate himself, including the numerous courses he has completed, such as Algebra II, Italian, and History of Islam. (Doc. No. 220, Ex. D, pp. 1, 2, 5, 14). Additionally, the Court thanks Defendant for the service he has done to help other prisoners rehabilitate themselves by tutoring them for their high-school equivalency. (Doc. No. 220, p. 15).

Third, Defendant has not shown a change in *relevant* law. Defendant points to changes in state laws regarding cannabis as well as a change in federal law legalizing "hemp cannabis with less than 0.3% delta-9-tetrahydrocannabinol (THC) . . . ." Id. at 16. Neither state law nor this change in federal law, however, is relevant to this case. Trafficking "1,000 kilograms or more of a mixture or substance containing a detectable amount of marihuana " carries with it a punishment of ten-years to life in prison today just as it did when Defendant was convicted eighteen years ago. 21 U.S.C.A. § 841(a)(1) and (b)(1)(A)(vii). Therefore, Defendant has not shown a change in law establishing an extraordinary and compelling reason to reduce his sentence.

Finally, the time Defendant has already served in prison does not present an extraordinary and compelling reason to reduce his sentence. Defendant points to U.S.S.G. § 1B1.13 to support his argument, but the portion of the policy statement he references is in relation to the age of the defendant as an extraordinary and compelling reason supporting a sentence reduction:

> Provided the defendant meets the requirements of subdivision (2), extraordinary and compelling reasons exist under any of the circumstances set forth below: . . . The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

8

U.S. Sent't Guidelines Manual § 1B1.13 (U.S. Sent'g Comm'n 2022). It should be noted that the § 1B1.13 policy statement is not binding on this Court but may be considered. U.S. v. McCoy, 981 F.3d 271, 284 (4th Cir. 2020) ("There is as of now no applicable 'policy statement' governing compassionate-release motions filed by defendant under the recently amended § 3582(c)(1)(A), and as a result, district courts are 'empowered . . . to consider *any* extraordinary and compelling reason for release that a defendant might raise.'") (quoting U.S. v. Brooker, 976 F.3d 228, 230 (2d Cir. 2020)). Without even considering whether Defendant meets the requirements of subdivision (2), Defendant's age does not constitute an extraordinary and compelling reason warranting a sentence reduction because he is not at least 65 years old. According to the PSR, Defendant was born on November 21, 1959, making him 63 years old today. (Doc. No. 224, p. 2). Thus, this argument fails to establish an extraordinary and compelling reason, as well.

### B. § 3553(a) Factors

Defendant argues the § 3553(a) factors "pertaining to punishment, deterrence, and protection of the public all weigh in favor of release." (Doc. No. 220, p. 20). Defendant also emphasizes he is a first-time offender serving time for a "non-violent" offense, id. at 19, and that he has been rehabilitated, as evidenced by his incarceration record which shows he is "a dependable, active contributor to the prison community" and a "'model inmate . . . ,'" id. at 18. Despite Defendant's characterization of his offense as "non-violent," the record shows otherwise and the seriousness of Defendant's crimes compels the Court to find his life sentence to be sufficient, but not greater than necessary to comply with the basic aims of § 3553(a).

At the outset, the Court highlights the sheer quantity of marijuana—*at least* 20,000 kilograms—Defendant trafficked into the United States from Mexico. Moreover, Defendant was not simply a pawn in the operation. On the contrary, Defendant was the head of a very large and

extensive drug trafficking operation which transported marijuana across the country. He hired several other people to transport marijuana via his legitimate, furniture-shipping trucking company, and he laundered the proceeds from this illegal endeavor through his daughter's car lot. When his couriers were arrested, he took care of their families and even paid for legal counsel for two of them. The most concerning facts in the PSR, however, exhibit Defendant's ruthlessness in the operation. For example, the PSR explains Defendant's coercive behavior and threats of violence:

> After Mario Barragan and Martin Barragan began cooperating with investigators, [Defendant] again visited Martin's wife, Marina Barragan, and advised her that if Mario Barragan cooperated with police, the same thing that happened to Mario's first wife would happen to her. [Defendant] also stated that "they" had kidnapped Abel. After cooperating with agents and arranging a taped conversation with [Defendant], Abel Haro has been missing and is presumed dead.

(Doc. No. 224, p. 5).

Although it is admirable, the work Defendant has done to rehabilitate himself does not outweigh the other § 3553(a) factors. The educational programs Defendant has participated in, the completion of his GED, and the time he has invested in tutoring fellow inmates demonstrate Defendant's commitment to bettering himself and being a positive influence on society. Additionally, the letters the Court has received from Defendant's family show he is a family man with a strong support system. In light of all the facts, however, it is clear to this Court that reducing Defendant's sentence to time served, which is approximately 241 months, would not only be imprudent, but it would be unjust to the communities he harmed during the course of his criminal activities. Thus, this Court finds Defendant's life sentence to be sufficient, but not greater than necessary to punish him, deter others from committing the same and similar offenses, and to protect the public.

## IV. CONCLUSION

**IT IS, THEREFORE, ORDERED** that the Motion to Expedite, (Doc. No. 241), and Motion to Withdraw, (Doc. No. 241), are GRANTED.

**IT IS FURTHER ORDERED** that the Motion for Compassionate Release, (Doc. No. 220), is DENIED.

**IT IS SO ORDERED.**

Signed: August 2, 2023

Frank D. Whitney
United States District Judge